

The following constitutes the
Memorandum Decision of the Court.
Signed March 10, 2014

_____
Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re | No. 12-46157 RLE |
| | Chapter 7 |
| FRESH CHOICE, LLC, a Delaware Limited Liability Company, | |
| Debtor. | |

**MEMORANDUM DECISION ON APPLICATION BY VAUGHT & BOUTRIS, LLP FOR COMPENSATION FOR SERVICES RENDERED AS ATTORNEYS FOR DEBTOR**

This matter is before the court on the Application by Vaught & Boutris, LLP ("Counsel") for Compensation for Services Rendered as Attorneys for Debtor (the "Application"), and on the objection by the chapter 7 trustee, John Kendall ("Trustee") and the joinder by administrative claimant, former counsel to the unsecured creditors' committee, and interested party McNutt Law Group, LLP ("McNutt") (together, the "Objection"). The Application and Objection have

been fully briefed and argued.  The following constitutes the court's findings of fact and conclusions of law.

## I.   Factual Background

On July 24, 2012, Counsel filed a chapter 11 bankruptcy petition on behalf of Debtor, Fresh Choice, LLC ("Debtor").

An application to employ Counsel was filed on July 26, 2012 (the "Employment Application").  See Docket #9.  In the Verified Statement that accompanied the Employment Application, Counsel disclosed

> [It had] recently performed legal serivces [sic] for Debtor in discussions with the Internal Revenue Service and State Board of Equalization prior to the filing of the bankruptcy. [Counsel] previously represented David S. Boyd in his personal tax matters. At the time of the bankruptcy filing, neither the Debtor nor its President, David S. Boyd, nor its members owed any funds to [Counsel.]

See Verified Statement at Docket #10, p. 1, ¶3.  Counsel further disclosed,

> At this time, [Counsel is not aware] of any existing or potential conflict of interest that would impact Debtor adversely in any way. . . . Based on the foregoing, [Counsel] is not aware of any connection it has to creditors or other parties in interest that is adverse to Debtor or that would cause [Counsel] to commit any effort less than its full and complete effort to Debtor's legal representation.

Id. at p. 2, ¶¶5-6.  Finally, Counsel disclosed receiving a $50,000 retainer prior to the filing of the bankruptcy case.  Id. at p. 2, ¶4.  See Also Rule 2016(B) Statement filed August 22, 2012, at Docket #109.[1]

---

[1]The $50,000 retainer amount disclosed was not accurate. Specifically, in response to a subsequent request by the court for

2

On August 13, 2012, the United States Trustee ("UST") filed an objection to the Employment Application, in relevant part, on the grounds that further disclosure was necessary regarding Counsel's previous employment by Debtor's Responsible Individual, David Boyd ("Boyd") and regarding the source, date and application (if any) of the pre-petition retainer. See Docket #66.

On August 23, 2012, Counsel filed an Amended Verified Statement in support of the Employment Application. See Docket #119. In the Amended Verified Statement, Counsel disclosed that with respect to its representation of Boyd: (1) Counsel began its representation in 2001 and completed the representation at the end of 2008; (2) the representation of Boyd comprised less than 3% of Counsel's revenue during the relevant time period; and (3) as of the bankruptcy filing, there was no ongoing attorney-client relationship between Counsel and Boyd. Id. at pp. 1-2, ¶3. Regarding the pre-petition retainer, Counsel further disclosed that of the $50,000 received,[2] $8,598 was applied to pre-petition fees,

---

an accounting of fees received, Counsel submitted a declaration which disclosed that prior to the bankruptcy filing it had received a cashier's check from Debtor in the amount of $51,250. See Docket #523 at p. 2, ¶4. $1,046 of that amount appears to have been used for the filing fee. Thus, any future reference to the "retainer" in this Memorandum refers to the $50,204 Counsel was holding after payment of the filing fee.

[2]This disclosure was also inaccurate as it failed to disclose or account for the additional $204 Counsel had received from Debtor. See supra note 1 (actual retainer received after payment of filing fee was $50,204).

3

$41,402 remained as of the petition date, and on the date of the bankruptcy filing, neither Debtor, nor Boyd owed Counsel any funds. Id. at ¶¶3-4. Finally, Counsel asserted that it was disinterested as contemplated by 11 U.S.C. § 101(14). Id. at ¶5.

On September 4, 2012, an order approving Counsel's employment was entered. See Docket #144.

The case proceeded as a chapter 11 between September and November of 2012. Due to various factors, the reorganization failed and on November 7, 2012, the case was converted to chapter 7 and the Trustee was appointed. See Docket #355.

On March 14, 2013, the Trustee filed a Notice of Bar Date for Filing Chapter 11 Administrative Claims. Pursuant to the Notice, all creditors with claims incurred between July 24, 2012 and November 6, 2012 were required to file a Chapter 11 Administrative Claim on or before May 13, 2013. See Docket #483. Counsel was not listed on the Certificate of Service attached to the Notice of Bar Date, but did receive the Notice via ECF. Id.

On May 17, 2013, Counsel filed the current Application, seeking approval of fees in the amount of $84,383.15 and expenses in the amount of $3,370 incurred in its representation of Debtor during the chapter 11 period. See Docket #491. On June 3, 2013, Counsel filed a Correction to the Application in response to an

4

objection filed by the UST. See docket #497 (UST Objection) and #498 (Counsel's Correction).³

On June 5, 2013, the Trustee filed, and McNutt joined, the current Objection to the Application. See Docket ##499-502. The Objection requests disallowance of all fees as well as the return of the retainer paid to Counsel. Id. Subsequently, various replies, responses and declarations were filed by the parties. See Docket ##509-510 (Counsel's Response); ##512-513 (Trustee's Reply); ##514-515 (McNutt's Reply and Joinder to Trustee's Reply); #520 (Counsel's Supplemental Declaration); #522-523 (Declaration of Donald Briggs and Second Supplemental Declaration of Counsel); #525 (Further Supplement of McNutt); #526 (Trustee's Reply to Counsel's Second Supplemental Declaration); and #527 (Counsel's Further Reply).⁴

The court held a hearing on the Application on November 20, 2013. At the conclusion of the hearing the court took the matter under submission, and pending resolution, ordered Counsel to turn over to the Trustee: (1) $41,606 held in Counsel's trust account, representing the balance of the retainer paid to Counsel; and (2) $8,598 held in Counsel's general account, representing the pre-

---

³ The UST's objection was technical in nature and appears to have been fully resolved by the filing of Counsel's Correction as they have filed no further papers and did not appear at the hearings on the Application.

⁴ The relevant facts from the various filings will be addressed in more detail, below.

petition fees Counsel paid itself from the retainer.[5] An order to that effect was entered on November 21, 2013. See Docket #529.

## II. Discussion

Various theories were advanced by the Trustee and McNutt to support their contentions that Counsel should not be awarded any fees and should be required to disgorge the entire retainer. Throughout the course of briefing the issues, some of those theories survived and others fell by the wayside. The following issues remain for determination by this court: (1) whether the Application was timely; (2) whether Counsel was a creditor as of the filing date and therefore, was not "disinterested"; (3) whether Counsel's performance during this case was satisfactory; and (4) whether Counsel failed to disclose an actual and disqualifying conflict of interest.

### A. Timeliness of the Application

The Trustee and McNutt first allege that because the administrative claims bar date ran on May 13, 2013, and the Application was not filed until May 17, 2013, the Application was not timely and all fees should be disallowed. The Trustee analogizes the administrative claims bar date to the absolute

---

[5]The court also ordered Counsel to turn over $54,170.15 held in Counsel's trust account, representing community property funds Counsel had been ordered to hold pursuant to an order by the Santa Barbara County Superior Court in Boyd's divorce proceeding. While the circumstances surrounding Counsel's receipt, retention, and distribution of those funds are relevant, and are described in more detail below, the court does not opine on the ownership or disposition of the funds in this Memorandum.

6

deadline to file claims under 11 U.S.C. § 501, pursuant to Federal Rules of Bankruptcy Procedure 3002(c) and 9006(b)(3). See Docket #499 at p. 2.

In response, Counsel argues that the language in the notice setting the administrative claims bar date was not clear that it applied to professionals, Counsel was not served with a copy of the notice, and in any event, Counsel was a secured creditor and was not required to file a proof of claim by virtue of its security interest in the retainer. See Docket #509 at pp. 2-3.

The parties have missed the relevant inquiry. While Rule 3002(c) provides that, in general, a proof of claim is timely if it is filed within ninety days of the first date set for the meeting of creditors, there is no similar Bankruptcy Rule or Code section setting a deadline to file administrative claims. Thus, the setting of a deadline is left to the discretion of the bankruptcy court. In re Gurley, 235 B.R. 626, 631-32 (Bankr. W.D. Tenn. 1999). Where, as here, the court does set a deadline, "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). While the Code does not specify what constitutes "cause," Rule 9007(b), which appears to apply here, permits enlargement of a deadline where the failure to act within the specified time was the result of "excusable neglect." Fed.R.Bankr.P. 9007(b); see also, In re Gurley, 235 B.R. at 632

7

(opining that excusable neglect may constitute sufficient "cause" to extend the deadline for filing an administrative claim).

Here, there was cause to extend the deadline for Counsel to file its Application as Counsel was not properly served with the notice of the administrative claims bar date. To the extent that Counsel's failure to receive the notice was the result of its own failure to include itself on the Rule 1019 statement, or the result of its belief that it was not subject to the administrative claims bar date, that failure was excusable neglect. Further, and possibly more important, is the underlying principal in bankruptcy law that issues will be determined on their merits where possible. A strict application of the administrative claims bar date would result in the disallowance of fees by a professional of this estate for no reason other than the Application was filed three days late. The court declines to disallow fees on this technical basis and instead, will address the merits of the Application. Thus, cause exists to extend the deadline for the filing of the Application to May 17, 2013.

**B.   Counsel's Disinterestedness**

The Trustee and McNutt next allege that Counsel was a creditor of Debtor's when the case was filed and, as a result, was not "disinterested" as defined by 11 U.S.C. § 327(a) and § 101(14).[6]

---

[6]The Trustee and McNutt's original objection was that in its Application, Counsel had acknowledged drawing down on its retainer on an ongoing basis without court approval. See Docket #499 and #500. In response, Counsel clarified that when the Application was

8

As a result, they argue that all fees should be disallowed and the retainer should be returned. See Docket ##525 and 526.

Section 327(a) provides, in pertinent part, that a debtor-in-possession "may employ one or more attorneys. . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons[.]" 11 U.S.C. § 327(a). Relevant for our purposes, § 101(14)(A) defines "disinterested" as a person that "is not a creditor[.]"

In connection with its Employment Application, Counsel filed a Verified Statement and Amended Verified Statement. Both statements were signed under penalty of perjury by Counsel and stated that as of the bankruptcy filing date, Counsel was not owed any money by Debtor. See Docket #10, at ¶3 and Docket #119, at ¶¶3-4. The Amended Verified Statement also made the affirmative representation that Counsel was disinterested as contemplated by 11 U.S.C.

---

filed, Counsel believed it had drawn down on the entire retainer. Upon further review and discussion with staff members, however, Counsel discovered that the original retainer had remained in Counsel's client trust account since its receipt pre-petition. See Docket #509 at pp. 3-4. Later, in response to a request by the court for an accounting of the fees received, Counsel submitted a declaration which disclosed that: (1) Counsel received a $51,250 retainer on the date of the bankruptcy filing (i.e., 7/24/12); (2) pre-petition fees incurred by Counsel and totaling $8,598 were not paid (i.e., transferred into Counsel's general operating account) until 7/26/12; and (3) the balance of the retainer totaling $41,606 had been and continued to be held in Counsel's trust account pending resolution of the Application. See Docket #523 at p. 2, ¶¶4-5 and Docket #527 at p. 3, ¶5. These disclosures resulted in the current argument that Counsel was not disinterested.

9

§ 101(14). See Docket #119, at ¶5. Unfortunately, these statements were not true, as Counsel later discovered and disclosed to the court that it was owed $8,598 in pre-petition fees that were not paid until two days after the petition was filed. See Docket #523 at p. 2, ¶¶4-5 and Docket #527 at p. 3, ¶5. Thus, on the petition date, Counsel was a creditor and was not disinterested.

This does not lead immediately to the conclusion, however, that all fees must be disallowed as requested by the Trustee and McNutt. It is true that a professional's employment must be approved by the court for its fees to be paid by the estate. Shapiro Buchman, LLP v. Gore Bros. (In re Monument Auto Detail, Inc.), 226 B.R. 219, 224 (9th Cir. BAP 1998 (citing In re Weibel, Inc., 176 B.R. 209, 211 (9th Cir. BAP 1994)). It is the corollary to this rule that if for some reason an employment order is vacated, no fees can be awarded. Typically, however, in a case such as this where there appears to be no attempt by counsel to defraud or mislead the court and the failure to draw down on the retainer pre-petition appears to have been nothing more than an innocent administrative error, the court would utilize its discretion[7] and give counsel the option of waiving the pre-petition fees. If counsel agreed, it would no longer be considered to be a pre-petition "creditor," it would continue to be "disinterested,"

---

[7] See generally, Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis), 113 F.3d 1040 (9th Cir. 1997) (citations omitted) (recognizing the court's broad discretion to award and deny fees).

10

there would be no basis to vacate the employment order, and the court would proceed to a review of the pending fee application on its merits. Unfortunately, giving Counsel that option in this case would be a pyrrhic victory, as the court is compelled to disallow its fees for the more egregious reasons detailed below.

### C. Counsel's Competence

The Trustee and McNutt next allege that none of the fees sought by Counsel are reasonable or necessary as Counsel had insufficient experience to handle a case of this size and failed to enter into the bankruptcy with a plan of action, which lead to delay and the incurrence of significant chapter 11 expense. See Docket #499 at p. 2; ¶3; docket #501 at pp. 2-3; docket #514 at p. 4, lines 3-16.

While the court agrees that this case was not successful by any stretch of the imagination, it cannot pin the blame squarely on Counsel's shoulders. Further, as the court is compelled to disallow all of Counsel's fees for the more egregious reasons detailed below, apportioning blame is unnecessary.

### D. Counsel's Conflict of Interest and Failure to Disclose

Finally, the Trustee and McNutt allege that Counsel's fees should be denied and the retainer returned because Counsel: (1) took actions and positions that benefitted Boyd individually and were inconsistent with its duties to Debtor and the estate; and (2) failed to comply with its duty to disclose potential conflicts on an ongoing basis by failing to disclose that Counsel was holding

11

funds in its client trust account that belonged to Boyd and his wife. See, Docket #499 at pp. 3-4; #500 at p. 2; #512 at pp. 3-5; #514 at pp. 2-3; #525 at pp. 3-4; and #526 at p. 3. The court need not reach the issue of whether Counsel had an actual conflict, as Counsel's failure to disclose the fact that it was holding personal funds for Boyd and his wife in its client trust account is determinative and requires that the court disallow all fees and order the retainer be returned.

Federal Rule of Bankruptcy Procedure 2014(a) establishes the procedure for the employment of an estate professional and requires a professional to file an application that discloses "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors [and] any other party in interest[.]" Rule 2014(a) further requires a professional to file a "verified statement . . . setting forth the [professional's] connections with the debtor, creditors, or any other party in interest[.]" Id. The purpose of Rule 2014 is to "[assist] the court in ensuring that [a professional] has no conflicts of interest and is disinterested, as required by 11 U.S.C. § 327(a)." Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 881 (9th Cir. 1995).

Under the Rule 2014 disclosure requirements, a professional has an independent duty to disclose all relevant information to the court. In re Park-Helena Corp. 63 F.3d at 882. The duty is one of complete disclosure of all known facts that are or may be

12

pertinent, and a professional may not exercise any discretion to withhold information. <u>In re Woodcraft Studios, Inc.</u>, 464 B.R. 1, 8 (N.D. Cal. 2011) (citations omitted), <u>aff'd</u> <u>Kun v. Mansdorf</u>, 2014 WL 768659 (9th Cir. Feb. 27, 2014). "It is the bankruptcy court that determines whether a professional's connections render him or her unemployable under § 327(a) - not the other way around." <u>In re Sundance Self Storage-El Dorado, LP</u>, 482 B.R. 613, 631 (Bankr. E.D. Cal. 2012). The duty to disclose "is a continuing obligation as to which the risk of defective disclosure always lies with the discloser." <u>In re Kobra Props.</u>, 406 B.R. 396, 402 (Bankr. E.D. Cal. 2009) (citing <u>In re Park-Helena Corp.</u>, 63 F.3d at 880-81; cf <u>Official Comm. Of Unsecured Creditors v. Michelson (In re Michelson)</u>, 141 B.R. 715, 719-20 (Bankr. E.D. Cal. 1992)).

The disclosure requirements of Rule 2014 are construed strictly, and "failure to comply . . . is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." <u>In re Park-Helena Corp.</u>, 63 F.3d at 880, 881-82 (citations omitted); <u>See also</u>, <u>In re Lewis</u>, 113 F.3d at 1045 (noting that the court has broad authority to deny any and all compensation for a professional's failure to comply with the disclosure requirements); <u>In re Woodcraft Studios, Inc.</u>, 464 B.R. at 11 (finding that disclosure violations, by themselves, are independent grounds for denying all requested fees). Though the results may be harsh, even a negligent or inadvertent failure to

13

disclose fully relevant information may result in a denial of all requested fees. In re Park-Helena Corp., 63 F.3d at 882 (citations omitted). "Literal enforcement of the rule is required to assure its vitality in combating the evils against which it is aimed." In re Plaza Hotel Corp., 111 B.R. 882, 883 (Bankr. E.D. Cal. 1990). For the reasons stated below, the court finds that Counsel breached its duty to provide ongoing disclosure and, as a result, all fees and expenses sought must be denied and the retainer returned.

In the July 26, 2012 Verified Statement that accompanied the Employment Application, Counsel disclosed that it had "previously represented David S. Boyd in his personal tax matters." See Docket #10, p. 1, ¶3. Counsel further disclosed,

> At this time, [Counsel is not aware] of any existing or potential conflict of interest that would impact Debtor adversely in any way. . . . Based on the foregoing, [Counsel] is not aware of any connection it has to creditors or other parties in interest that is adverse to Debtor or that would cause [Counsel] to commit any effort less than its full and complete effort to Debtor's legal representation.

Id. at p. 2, ¶¶5-6.

Thereafter, on August 23, 2012, in response to UST's objection to the Employment Application, Counsel filed an Amended Verified Statement and disclosed that: (1) Counsel began its representation of Boyd 2001 and completed the representation at the end of 2008; (2) the representation comprised less than 3% of Counsel's revenue during the relevant time period; and (3) as of the bankruptcy filing, there was no ongoing attorney-client relationship between Counsel and Boyd. See Docket #119 at pp. 1-2, ¶3.

14

Based, in part, on those disclosures, the court entered the order approving Counsel's employment on September 4, 2012. See Docket #144.

Subsequent to Counsel filing its Employment Application, Verified Statement, and Amended Verified Statement, however, Counsel was placed in a position where additional disclosures were necessary. Specifically, during this bankruptcy case, Boyd and his wife were in the midst of a bitter divorce proceeding in the Santa Barbara Superior Court (the "Family Court"). See Docket #509 at p. 5. On August 31, 2012, approximately three weeks prior to the entry of the order approving Counsel's employment, the Family Court entered an order dividing and allocating some of the Boyds' community assets, including funds from the sale of community real property (the "Funds"). Id. Given the level of distrust between the parties, Boyd and his wife asked the Family Court judge to designate Counsel to hold the Funds in trust. Id. at p. 6. Thus, paragraph 2.g of the order entered by the Family Court provided, in pertinent part,

> The remaining net proceeds of sale from the College Avenue property shall be made payable to the trust account of [Counsel] to be held in trust and used solely [sic] purposes of providing cash for the Fresh Choice bankruptcy proceeding. Any proceeds not needed in the Fresh Choice bankruptcy proceeding shall continue to be held by [Counsel] in trust subject to further stipulation of the Parties or further order of the [Family Court].[8]

---

[8]Despite the specific language in the Order, Boyd's Family Law attorney, Donald Briggs, states that the actual intent of the parties was for Boyd to use the funds "to support the community

15

See Docket #510 at Exhibit B. Subsequently, funds in the amount of $1,028,078.48 were deposited in Counsel's trust account.[9] See Docket #523 at p. 3, ¶7. Counsel held and disbursed these funds pursuant to Boyd's direction,[10] but never disclosed its receipt of

---

businesses, Fresh Choice and Espresso Roma, as [Boyd] determined in his business judgment." See Docket #522 at ¶7. He also states that the funds were an asset of Espresso Roma, and not of this estate, and that "if the funds could not be used to save [Debtor] and stabilize Espresso Roma, based on [Boyd's] best business judgment, then the remaining community funds would go back to [Boyd and his wife.]" Id. at ¶¶9-10. The conflicting information regarding the nature of the funds, who they belonged to, and what the funds were intended to be used for made disclosure of the situation by Counsel that much more necessary, if only just to obtain guidance regarding Counsel's obligations.

[9]Counsel allegedly knew nothing of the request by Boyd and his wife that Counsel hold the funds, or of the Family Court's granting of that request, until a few days before the check was issued to Counsel from escrow on October 12, 2012. See Docket #520 at p. 3. Counsel alleges that it agreed to the arrangement because Counsel "knew that [Boyd] was in a terrible personal and business financial position[.]" See Docket #523 at p. 3, ¶7. Counsel claims that it was not aware that there was an actual order issued by the Family Court until Counsel received an email letter from Mrs. Boyd's attorney on January 25, 2013. Id. at pp. 3-4, ¶7. It is unclear who informed Counsel of the arrangement prior to that time or what Counsel was told. Suffice it to say that Counsel appears to have taken no independent steps to investigate or verify the terms of the arrangement, or Counsel's obligations thereunder.

[10]Counsel asserts that it told Boyd's personal counsel that Counsel would not exercise any discretion regarding the release of the funds and that Counsel "would honor any requests, without question, for release of the funds that [Boyd] indicated were needed for [Debtor] or Espresso Roma." See Docket #523 at p. 3, ¶7. To that end, Counsel discloses that in response to request from Boyd, Counsel made four different disbursements from its trust

16

them to the court. As of the date of the Application, Counsel was still holding $54,170.15. See Docket #523 at p. 4.

Counsel asserts various reasons why it believes its actions in holding and disbursing Boyd's personal funds did not create a conflict of interest.[11] These arguments miss the point entirely. The fact of the matter is that despite a strict ongoing duty to disclose, Counsel failed to disclose that it received, held, and disbursed funds on Boyd's behalf while representing Debtor. It was not up to Counsel to decide on its own whether the underlying facts resulted in a conflict. It was incumbent upon Counsel to disclose

---

account to either Boyd individually, or to Espresso Roma. See Docket #523 at p. 4, ¶9 and at Exhibit A. The court notes that two of those disbursements were made after the case was converted to chapter 7. See Docket #523 at Exhibit A.

[11] Among the arguments made by Counsel are: (1) Counsel has never been involved in Boyd's divorce proceeding (Docket #509 at p. 6); (2) Counsel's sole direction pursuant to the Family Court order, was to release the funds to provide liquidity to any Fresh Choice plan (Docket #509 at p. 6); (3) Counsel did not advise Boyd on the use of the funds or create an attorney-client relationship by holding the funds (Docket #509 at p. 6 and #523 at p. 5, ¶12); (4) the UST reviewed the Employment Application and signed off on it (Docket #510); (5) Counsel urged Boyd to obtain separate legal counsel, which Boyd did (Docket #510 at p. 3, ¶7); and (5) it was always Counsel's understanding that the funds were the community property of Boyd and his wife and were not assets of this bankruptcy estate (Docket #523 at p. 4, ¶11). The court notes that there are various inconsistencies in the arguments advanced by Counsel, the arguments changed over time, and in general, they raise more questions than they answer. Given, however, that the court's decision rests solely on the failure to disclose and not a determination regarding a conflict, the court does not address the substance of the arguments.

17

all of the relevant facts so that independent third parties could make that determination. This, Counsel failed to do. The issues that arose as a result of this failure could have been avoided in their entirety had Counsel complied with its duty. This failure was so egregious and so material that any remedy less than a denial of all fees and costs requested would be insufficient.

For the foregoing reasons, the court will sustain the Objection and deny the Application. Fees in the amount of $84,383.15 and expenses in the amount of $3,370 requested by Counsel will be disallowed and Counsel will be required to disgorge the $50,204 retainer. An Order to that effect will follow.

**\*\*\*END OF MEMORANDUM DECISION\*\*\***

**COURT SERVICE LIST**

Basil J. Boutris
Law Offices of Vaught and Boutris
80 Swan Way #320
Oakland, CA 94621

Reidun Stromsheim
Stromsheim and Assoc.
4 Embarcadero Center 39th Fl.
San Francisco, CA 94111

Scott H. McNutt
McNutt Law Group
188 The Embarcadero #800
San Francisco, CA 94105

19